**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
BOSTON DIVISION**

| | |
|---|---|
| **CIBAO MARKET,** a Massachusetts Sole Proprietorship, and **JUAN CRISOSTOMO,** an Individual,<br><br>        Plaintiffs,<br><br>v.<br><br>**UNITED STATES OF AMERICA,**<br><br>        Defendant. | **CIVIL ACTION NO. _____**<br><br>**COMPLAINT** |

The Plaintiffs, CIBAO MARKET, a Sole Proprietorship, and JUAN CRISOSTOMO, an Individual, by and through their undersigned counsel and hereby sue the UNITED STATES OF AMERICA upon the grounds set forth herein, and in support thereof, states as follows:

**FACTUAL BACKGROUND**

1.      The Plaintiffs own and operate a small retail store in Lynn Massachusetts named CIBAO MARKET (hereinafter "Ciabo"). The store functions as a small grocery store for local residents.

2.      Located in Lynn Massachusetts, Ciabo serves a community where there are approximately 26,084 households that receive benefits under the Supplemental Nutrition Assistance Program[1] (also referred to as "SNAP"), formerly known as Food Stamps, which is overseen by the Food & Nutrition Service ("FNS") of the United States Department of Agriculture ("USDA"). Of these SNAP participant households, approximately 36.8% have

---

[1] See USDA Publication of January 2018, Profile of SNAP Households: MA Congressional District 6.

children under eighteen (18) years of age; 48.8% are one or more people 60 years and over, and 58.4% are disabled individual(s).

3. As a service to the SNAP participant population, Ciabo accepts EBT payments and participates in the SNAP program as an authorized retailer in order to better serve its customer base.

4. Since the store began accepting food stamps/EBT, Ciabo has never once received a warning letter, disciplinary action, or any other correspondence from the United States Department of Agriculture which would indicate that the store was somehow improperly accepting benefits or otherwise operating the program incorrectly.  Nor was there any correspondence from the Defendant to indicate that anything suspicious was occurring that the store's management and ownership should look into.

5. Nevertheless, on September 19, 2017, the USDA, through the FNS, sent the Plaintiffs a Charging Letter pursuant to 7 C.F.R. §278.6, alleging a series of violations on the part of the Plaintiffs in their acceptance of SNAP benefits from participants.  The transactions listed by the Defendant in the Charging Letter occurred between January 2017 and June 2017.

6. The Plaintiffs vehemently denied and defended against the Charging Letter, but on November 2, 2017, were permanently disqualified from SNAP.  Immediately upon receiving the SNAP disqualification letter, the store lost its use of the EBT terminal.

7. Not all SNAP disqualifications result in immediate termination of a store's EBT terminal.  Violations for the sale of gasoline, alcohol or tobacco on SNAP benefits does not result in an immediate termination of the store's EBT benefits.

8. As a result of this early termination, and prior to any discovery process or formal hearing, the store lost a considerable portion of its gross revenue (including revenue derived from SNAP) and a substantial portion of the store's clientele.

9. In compliance with the regulations, the Plaintiffs timely filed a Request for Administrative Review as permitted by 7 C.F.R. §279, and presented arguments and evidence in support of their position – all the while losing revenue from the absence of their EBT terminal.

10. In the administrative review, the Plaintiffs took issue not only with the disqualification process and the inaccuracy of the evidence against them, but also with the comparative lack of direct evidence that any violations of SNAP retailer policies had occurred.

11. The Administrative Review Branch of the FNS responded to the Plaintiffs' appeal in a letter and opinion entitled Final Agency Decision, dated February 28, 2018, which was received March 6, 2018, and attached hereto as **Exhibit "A"**. The Plaintiffs' administrative appeal was denied and the prior decision was upheld

12. This Judicial Appeal has been filed, timely, to seek the reversal of the USDA's current decision to permanently disqualify the Plaintiffs from participating as a SNAP retailer.

13. To date, no evidentiary hearing has been had, nor any discovery process permitted.

14. The Department's administrative record, which contains all of the evidence against the Plaintiffs, has not been disclosed to the Plaintiffs.

**JURISDICTION AND VENUE**

15. The Plaintiffs bring this action based upon their disqualification from eligibility to participate in the Supplemental Nutrition Assistance Program, as codified by Congress in 7 U.S.C. §§ 2011 – 2036(c).

16. This Court has subject matter jurisdiction over the matters raised by the Plaintiffs in this case pursuant to 7 U.S.C. §2023, and 7 C.F.R. §279.7.  Furthermore, 28 U.S.C. §1331 gives this Court original jurisdiction over civil actions arising under the laws of the United States, for which the aforementioned statute and regulation qualify.

17. Venue is appropriate in this District pursuant to 7 C.F.R.§279.7(a), 7 U.S.C. §2023(13) and 28 U.S.C. §1391(b) as this Plaintiffs' business was owned and operated in Lynn, MA, which is a part of this District.

**PARTIES**

18. The Plaintiff, CIBAO MARKET, a Sole Proprietorship, operates at 118 S. Common St., Lynn, MA 01902-4554.  Cibao Market is referred to herein with the other Plaintiff collectively as "Ciabo."

19. Although CIBAO MARKET is a Sole Proprietorship, it is a "firm" within the meanings and standings of 7 U.S.C. §2021 and §2023.

20. The Plaintiff, JUAN CRISOSTOMO, is a natural person and a resident of Lynn, MA.  Juan Crisostomo is referred to collectively with the other Plaintiff as "Ciabo" herein.

21. Mr. Crisostomo is the individual licensee for the SNAP retailer as the program requires a natural person to be the holder of the license.

22. The Defendant, the UNITED STATES OF AMERICA, acting through its agency, the United States Department of Agriculture (hereinafter referred to as the "USDA" or "Department"), and its subservice, the Food and Nutrition Service.  The Defendant may be referred to herein as "the Government" or "the Department".

**GENERAL ALLEGATIONS**

23. The Supplemental Nutrition Assistance Program ("SNAP") is a government program operated pursuant to Title 7 United States Code, Chapter 51, and codified more specifically as 7 U.S.C. §§2011-2036(c).

24. The general purpose of SNAP is to provide food benefits (formerly "food stamps") to program participants who meet certain financial need requirements. SNAP participants are awarded benefits (money) issued on a state-by-state basis in varying amounts based upon the needs of their household. These benefits are transmitted to, and utilized by the participant, through an Electronic Benefits Transfer (EBT) card, which conceptually functions similar to a debit card.

25. The benefits are to be used by the participant only for the purchase of food and other eligible items sold by an approved SNAP retailer, such as Ciabo.

26. In turn, SNAP retailers are governed by the Defendant through 7 C.F.R. §278.6 which, in pertinent part, permits the disqualification or suspension of retailers who violate SNAP regulations.

27. Significantly, SNAP violations on the part of retailers typically occur in two areas: (1) the sale of ineligible items to SNAP participants (using their EBT benefits), and (2) trafficking in SNAP benefits.

28. The term "trafficking" is defined at length by 7 C.F.R. §271.2, which states in pertinent part that trafficking is:

> "(1) The buying, selling, stealing, or otherwise effecting an exchange of SNAP benefits issued and accessed via Electronic Benefit Transfer (EBT) cards, card numbers and personal identification numbers (PINs), or by manual voucher and signature, for cash or consideration other than eligible food, either

directly, indirectly, in complicity or collusion with others, or acting alone;

(2) The exchange of firearms, ammunition, explosives, or controlled substances, as defined in section 802 of title 21, United States Code, for SNAP benefits;

(3) Purchasing a product with SNAP benefits that has a container requiring a return deposit with the intent of obtaining cash by discarding the product and returning the container for the deposit amount, intentionally discarding the product, and intentionally returning the container for the deposit amount;

(4) Purchasing a product with SNAP benefits with the intent of obtaining cash or consideration other than eligible food by reselling the product, and subsequently intentionally reselling the product purchased with SNAP benefits in exchange for cash or consideration other than eligible food; or

(5) Intentionally purchasing products originally purchased with SNAP benefits in exchange for cash or consideration other than eligible food;

(6) Attempting to buy, sell, steal, or otherwise affect an exchange of SNAP benefits issued and accessed via Electronic Benefit Transfer (EBT) cards, card numbers and personal identification numbers (PINs), or by manual voucher and signatures, for cash or consideration other than eligible food, either directly, indirectly, in complicity or collusion with others, or acting alone." 7 C.F.R. §271.2 (2016)

29. For purposes of this matter, the Government alleges that the Plaintiffs have trafficked directly in cash-for-benefits transactions as set out in subsection 1 of §272.1 outlined above.

30. While most of 7 C.F.R. §278.6 sets forth a graduated scale for punishment of SNAP retailers for the sale of ineligible items, trafficking is treated more harshly. Specifically, if a retailer is found to be trafficking in SNAP benefits, it (more specifically, the individual(s) who has applied for SNAP participation) is permanently disqualified from participation in the program, and may be issued a Transfer of Ownership Civil Money Penalty ("CMP") of

$11,000.00 per violation in the event the owner sells or transfers the store subsequent to a disqualification.  FNS also adds the retailer and its owner(s) and officer(s) to the federal database list of disqualified persons (found in the System for Award Management, www.SAM.gov) without notice or opportunity to appeal or be heard.

31. Inclusion on the SAM list causes licensees to lose their opportunities to work as professionals in any field even loosely associated with Government contracts – despite the fact that they may have had no participation in the violations alleged, or been aware of their existence.

32. In this matter the government maintains that there were four (4) violations, each of which is a pattern of transactions that the Department contests are indicative of trafficking in cash-for-benefits schemes.

33. These violations include:

   a. Multiple purchase transactions were made "too rapidly to be credible;"

   b. Multiple transactions were made from individual benefit accounts in unusually short time frames;

   c. The majority or all of individual recipient benefits were exhausted in unusually short periods of time; and

   d. "Excessively large" purchase transactions were made from recipient accounts.

34. None of the alleged transaction types are prohibited either by law or regulation.

35. Furthermore, the Defendant has no studies, statistical analysis, or empirical evidence to support its conclusion that these transaction types correlate to trafficking in SNAP benefits.

**ERRORS & OMISSIONS ON THE PART OF THE DEFENDANT**

36. The Plaintiffs did not engage in trafficking in SNAP benefits.

37. The Defendant lacks any direct evidence (eye-witness accounts, receipts, or the like) that trafficking occurred.

38. Instead, the Defendant based its disqualification upon data analysis, which is circumstantial by definition: evidence from which more than one logical conclusion can be reached.[2]

39. The Plaintiffs do not argue that the Defendant is not permitted to utilize data analysis in making its determinations, but rather that such data analysis must reasonably correlate to the violation alleged by the Defendant. Without meaningful, statistical correlate, data analysis is little more than an exercise in pure (inadmissible) speculation.

40. As mentioned above, the Department does not have any statistical studies or data that correlate the transaction patterns to trafficking in SNAP benefits. In fact, the Defendants' Rule 30(b)(6) witness (from multiple other SNAP proceedings), Mr. Douglas Wilson, has previously testified on that those transaction categories which the Defendant now qualifies as violations, are merely suspicious transaction types, and not in-and-of-themselves, indicative of trafficking.[3]

41. Furthermore, Mr. Wilson, as the Government's Rule 30(b)(6) witness with the most knowledge of the ALERT system, indicated that the categories and transactions cannot

---

[2] This reference is drawn from *Chief Counsel Advisory*, IRS CCA 200912021, though it is perhaps the best succinct definition of the term.
[3] Mr. Wilson's Deposition transcripts will be separately produced to the Defendant, and presented as necessary to this Court. However, attachment to this Complaint would be unnecessary and redundant.

distinguish between different SNAP violation types (such as trafficking, issuance of credit, and sale of ineligible items).

42. There is no statistically meaningful correlation between the three transaction categories and the act of "trafficking."

43. Despite this, cases using the ALERT system's categories are referred to FNS' Investigative Analysis Branch (IAB) for investigation and prosecution.

44. This instant matter was just such a case, referred to IAB Section Chief Gilda Torres's division for evaluation and prosecution. Ms. Torres was the Section Chief that issued the permanent disqualification in this case.

45. This process is not an impartial one, nor is it unbiased. As a rule, every single case referred to the IAB for data analysis is charged with trafficking in SNAP benefits.

46. Furthermore, Ms. Torres has found that trafficking has occurred in every single SNAP violation case that was brought before her over the course of at least the last twelve (12) years.

47. On the whole, of the thousands of cases handled every year, the IAB makes a finding of trafficking in nearly all (between 95% and 100% depending upon the section) of the cases. There is no impartiality in this process. It is an assembly line.

48. The Defendant, in this case did little in way of investigation to support its position that trafficking was more likely than not the cause of trafficking. Keeping in mind that as of this filing, the Plaintiffs **have never seen the Administrative Record** (this is not an exhaustive list of the failures on the party of the Defendant's data analysis):

   a. The Defendant did not interview the households engaged in the transactions, despite having the ability to do so;

  b. The Defendant continued to rely upon data comparison with other stores that were not operating under the same business circumstances, meaning that the final data analysis conducted by the Department was proverbially comparing apples to oranges, and accordingly, inaccurate; and

  c. The Defendant did not conduct any research on household shopping and spending habits, specifically with the effect on participants' store loyalty, item selection, purchase transaction frequency and transaction sizes.

  49. At the initial stages of the Administrative Decision, it is the Government's burden to prove by a preponderance of the evidence that it is more likely than not that trafficking had occurred.[4]

  50. The Government did not (and does not) have sufficient evidence to meet that burden, or to link the transactions to trafficking.

**PLAINTIFFS' ALLEGATIONS**

  51. The Plaintiffs do not have access to the Administrative Record.  At no point in this process have the Plaintiffs been given access to any records (aside from the Charge Letter, Permanent Disqualification Letter, and Final Agency Decision) relied upon by the Department in its analysis.[5]

  52. Furthermore, there have been no decisions made by Administrative Law Judges, Department Attorneys or other legal-trained individuals who could adequately weigh the evidence before the Department during the administrative process to date.

---

[4] On Judicial Appeal, the burden rests with the Plaintiffs.
[5] FOIA requests can be and have been made, but they produce documents that are almost entirely redacted.

53. What little Due Process actually exists in this process is borne out only here, at the Judicial Review stage of the case.

54. The Plaintiff's transactions were *bona fide* purchases of food items, in exchange for SNAP benefits as the system was intended, albeit not necessarily with the timing or amounts preferred by the Department.

55. However, the shopping habits of SNAP participants in the store are consistent with the transactions listed, and the Plaintiffs anticipate such testimony from these households.

56. The Plaintiffs' explanations for the transactions, as set forth in their Administrative Brief, are consistent with the actual shopping habits and trends that occur in the store.

57. In any case, the Store was not at any point in time, engaged in trafficking SNAP benefits.

## COUNT I: REQUEST FOR JUDICIAL REVIEW

58. The Plaintiffs incorporate and restate each and every paragraph set forth above as though fully set forth herein.

59. The Plaintiffs, pursuant to 7 U.S.C. §2023 and 7 C.F.R. §279.7 have the right to, and hereby do request a *de novo* judicial review of the permanent disqualification issued by the Defendant.

60. The Plaintiffs maintain that they did not traffick in SNAP benefits and ask that the Court conduct a trial on the merits of the matter, permitting the parties to present testimony and submit evidence in support of their positions.

61. The Government failed to consider the household demographics, spending habits and the like when determining the reasonableness of the transaction times and sizes. This information materially alters the evaluation of the transactions.

62. The Government failed to identify appropriate comparison stores against which to conduct its evaluation of the Plaintiffs' business practices and transaction data. As a data comparison, the lack of comparable stores rendered the evaluation patently invalid.

63. The Government failed to take into consideration the shopping habits of the store's SNAP participants, which cause transactions (such as those seen in the pattern) to occur.

64. Furthermore, there are likely additional inaccuracies in the Defendant's evaluation of this matter which have not yet been discovered as the Plaintiffs have not had an opportunity to review and rebut any of the collateral sources of information considered by the Defendant in rendering its decision.

65. Accordingly, the permanent disqualification of the Plaintiffs should be reversed, and the Plaintiff should be removed from the disqualified persons/store lists maintained within the Department.

66. Furthermore, to the extent that the Plaintiffs incur attorneys' fees and court costs in conjunction with this Judicial Appeal, the Defendant should be made to pay such fees and costs.

WHEREFORE, the Plaintiffs, CIBAO MARKET, Sole Proprietorship, and JUAN CRISOSTOMO, an Individual, respectfully ask this Court to conduct a *de novo* review of this matter, conduct a trial upon the merits of the Plaintiffs' case, and enter Judgment reversing the permanent disqualification, as well as awarding the Plaintiffs any attorney's fees and court costs they may incur in this matter.

Dated: April 5, 2018	Respectfully submitted,

/ Edward P. Harrington
Edward P. Harrington, Esq.
Massachusetts Bar No.: 559482
171 Milk Street, 2nd Floor
Boston, Massachusetts 02109
Telephone:	(617) 423-5959
Fax:	(617) 778-0881
Email:  eph@epharringtonlaw.net

-and-

Andrew Z. Tapp, Esq.
Florida Bar Number:  68002
Metropolitan Law Group, PLLC
1971 W. Lumsden Road, #326
Brandon, Florida 33511-8820
Telephone:	(813) 228-0658
Fax:	(813) 330-3129
Email:  Andrew@Metropolitan.legal
Application for *Pro Hac Vice* pending

**COUNSEL FOR PLAINTIFFS**